IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

APR 2 8 2023

**RECEIVED**

| | |
|---|---|
| JOHN DOE (Claimant #1), | ) |
| *Petitioner,* | ) |
| v. | ) Case No. 23-1124 |
| UNITED STATES SECURITIES, AND EXCHANGE COMMISSION | ) NOT YET SCHEDULED FOR ORAL ARGUMENT |
| *Respondent.* | ) |

## PETITION FOR REVIEW

Pursuant to Section 21F of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-6(f), 17 C.F.R. § 240.21F-13, and Rule 15 of the Federal Rules of Appellate Procedure, John Doe (Claimant #1) hereby petitions the Court for review of the Order Determining Whistleblower Award Claims (Rel. No. 97228, File No. 2023-47) of the U.S. Securities and Exchange Commission entered on March 31, 2023.

Accompanying this Petition is an Unopposed Motion to File Under Seal, seeking leave for the Petitioner to proceed as John Doe. The unredacted, non-public Order is attached as Exhibit 1; the redacted Order is attached as Exhibit 2. Petitioner requests that Exhibit 1 not be docketed publicly, and that it remain under seal pursuant to 15 U.S.C. § 78u-6(h)(2)(A) and Circuit Rule 47.1(a), as it will reveal his identity.

Respectfully submitted,

/s/ *Stephen M. Kohn*
Stephen M. Kohn

/s/ *David K. Colapinto*
David K. Colapinto

/s/ *Kayla M. Svihovec*
Kayla M. Svihovec

Kohn, Kohn & Colapinto, LLP
1710 N Street, NW
Washington, DC 20036
(202) 342-6980
sk@kk.com
dk@kkc.com
kayla.svihovec@kkc.com

*Attorneys for Petitioner*

Date: April 28, 2023

# EXHIBIT 2

UNITED STATES OF AMERICA

Before the

SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 97228 / March 31, 2023

WHISTLEBLOWER AWARD PROCEEDING
File No. 2023-47

---

In the Matter of the Claims for an Award

in connection with

Redacted
Redacted

Notice of Covered Action   Redacted

---

**ORDER DETERMINING WHISTLEBLOWER AWARD CLAIMS**

The Claims Review Staff ("CRS") issued Preliminary Determinations recommending the denial of the whistleblower award claims submitted by Redacted ("Claimant 1"), Redacted ("Claimant 3"), and Redacted ("Claimant 4") (collectively, the "Claimants") in connection with the above-referenced covered action (the "Covered Action"). Claimants filed timely responses contesting the preliminary denials. For the reasons discussed below, Claimants' award claims are denied.[1]

I. **Background**

   A. **The Covered Action**

   The investigation that led to the Covered Action (the "Investigation") was opened by Enforcement staff in Redacted after staff reviewed news reports indicating potential misconduct by Redacted (the "Company"). On Redacted, the Commission filed a complaint against the Company in federal district court alleging the Company Redacted. The Commission alleged that Redacted

---

[1] The CRS also preliminarily denied the award claim of Claimant 2. That claimant did not seek reconsideration of the Preliminary Determination, and therefore the denial of his/her claim was deemed to be the Final Order of the Commission under Exchange Act Rule 21F-10(f).

EXHIBIT 2 - Page 1

On ^Redacted^ ^Redacted^, the court entered final judgment ordering the Company to pay a ^Redacted^ civil penalty and permanently enjoining the Company from future violations of the securities laws.

On ^Redacted^ the Office of the Whistleblower ("OWB") posted the Notice for the Covered Action on the Commission's public website inviting claimants to submit whistleblower award applications within 90 days. Claimant 1 and Claimant 3 filed timely whistleblower award claims; Claimant 4 submitted an untimely award claim on ^Redacted^.

### B. The Preliminary Determinations and Claimants' Responses

On ^Redacted^, the CRS issued Preliminary Determinations recommending that Claimants' claims be denied.

1. Claimant 1

    i. **Preliminary Determinations**

The CRS preliminarily determined that Claimant 1 was not a "whistleblower" as defined under the Securities Exchange Act of 1934 ("Exchange Act") Rule 21F-2(a)(1) because Claimant 1 did not provide information regarding a potential securities law violation to the Commission in the form and manner required by Rule 21F-9. The CRS noted that Claimant 1 submitted information on a Form TCR in ^Redacted^, approximately ten months after Claimant 1's initial meetings with Commission staff in ^Redacted^. The CRS noted that the information provided by Claimant 1 in the ^Redacted^ TCR did not substantially assist the staff in its investigation and was not used in, nor contributed to, the charges brought by the Commission in the Covered Action.

The CRS also preliminarily determined that Claimant 1's submission to the Commission was not made voluntarily as required by Exchange Act Rules 21F-3 and 21F-4(a)(1). A submission to the Commission is considered "voluntary" if, as relevant here, it is provided "before a request, inquiry, or demand that relates to the subject matter of [the] submission" is directed to the claimant or the claimant's representative "[b]y the Commission" or in "connection with an investigation by . . . any other authority of the federal government."[2] In particular, the CRS stated that Claimant 1 made his/her submission to the Commission after a request, inquiry, or demand by Commission staff and other federal agencies that related to the same subject matter as Claimant 1's submission. The CRS noted that Claimant 1 did not submit information to any of the entities enumerated in Rule 21F-4(a) prior to being contacted by the Commission. The CRS also stated that whistleblowers do not meet the requirement of making a voluntary submission pursuant to Rule 21F-4(a) by providing information to the news media or foreign authorities.

---

[2] Exchange Act Rule 21F-4(a)(1)(i), 17 C.F.R. § 240.21F-4(a)(1)(i).

EXHIBIT 2 - Page 2

### ii. **Claimant 1's Response to the Preliminary Determinations**

Claimant 1 submitted a timely written response ("Claimant 1's Response") contesting the Preliminary Determinations.[3] Claimant 1 argues that he/she complied with the "form and manner" requirements of Rule 21F-9 because he/she submitted a TCR within 30 days of learning of the requirement. Claimant 1, a foreign national, contends that Claimant 1 was not aware of the TCR requirement until he/she met with his/her current counsel, and that none of his/her prior attorneys informed Claimant 1 of the existence of the Dodd-Frank Act or the TCR filing requirements. Claimant 1 also argues that he/she had not engaged any of his/her prior counsel with regard to the Dodd-Frank Act and was therefore not represented for purposes of a whistleblower submission until [Redacted]. Claimant 1 contends that once he/she became aware of those requirements, Claimant 1 submitted a TCR within 18 days. Claimant 1 also asserts that "there is no requirement that a whistleblower submit the same information provided to the news media to the SEC within a certain number of days to qualify for an award." Claimant 1 also states that he/she provided the information to other federal agencies before submitting his/her TCR.

Next, Claimant 1 argues that he/she "voluntarily provided 'original information' . . . through the news media, as permitted by the [Dodd-Frank Act]." Claimant 1 states that his/her information was "voluntarily" provided to the Commission effective the date Claimant 1 disclosed the information thorough the news media. Claimant 1 also contends that he/she qualifies as an original source of the information provided to the Commission via the news media, and submits a declaration from a journalist who worked with Claimant 1 in support of that contention.

Claimant 1 also argues that the Commission, "in an apparent oversight committed during the rulemaking process," did not include disclosures initially made to the news media within the definition of a voluntary submission. Claimant 1 states that such initial disclosures to the news media are authorized under the Dodd-Frank Act. Claimant 1 notes that the "SEC should have addressed third-party news media disclosures in their implementing rules," but "the failure of the SEC to create a rule covering initial whistleblower disclosures of original information to the news media does not negate this Congressionally established right." Because, according to Claimant 1, the Commission did not address this concern, Claimant 1 argues that the Commission must interpret its rules in way that permits voluntary disclosures to the news media.

Claimant 1 also argues that because of "the failure of the SEC to approve specific rules applicable to news media whistleblowers, the only published SEC rules that can be lawfully applied to media whistleblowers" are Rules 21F-10 and 21F-11, which pertain to the submission of whistleblower award applications. Claimant 1 further contends that statutes covering other

---

[3] *See* Exchange Act Rule 21F-10(e), 17 C.F.R. § 240.21F-10(e) (stating that a claimant may submit a written response contesting the Preliminary Determinations "within sixty (60) calendar days of the date of the Preliminary Determination, or if a request to review materials is made . . . , then within sixty (60) days of the Office of the Whistleblower making those materials available for your review."). Pursuant to Exchange Act Rule 21F-10(e)(1), claimants have thirty days from the date of the Preliminary Determinations to request the materials that formed the basis for the CRS's Preliminary Determinations. Claimant 1 did not submit such a request and thus did not receive the record materials.

EXHIBIT 2 - Page 3

whistleblower programs, such as those of the Internal Revenue Service and the Department of Justice, provide "carve-outs" for disclosures to the news media, and the failure to address such disclosures to the media in the Commission's whistleblower rules "undermined the First Amendment." Claimant 1 also states that the Preliminary Determinations ignore the impact that Claimant 1's disclosures had on the public interest and ignores the whistleblower program's goal of deterring wrongdoing. Lastly, Claimant 1 argues that the Commission should waive the voluntary submission and TCR submission requirements at issue here and grant Claimant 1 an award due to the quality of his/her submissions.[4]

2. Claimant 3

i. **Preliminary Determinations**

The CRS preliminarily determined that Claimant 3's claim be denied because Claimant 3 did not provide information that led to the successful enforcement of the Covered Action within the meaning of Section 21F(b)(1) of the Exchange Act and Rules 21F-3(a)(3) and 21F-4(c) thereunder. The CRS concluded that Claimant 3's information did not either (1) cause the Commission to (a) commence an examination, open or reopen an investigation, or inquire into different conduct as part of a current Commission examination or investigation, and (b) thereafter bring an action based, in whole or in part, on conduct that was the subject of claimant's information, pursuant to Rule 21F-4(c)(1); or (2) significantly contribute to the success of a Commission judicial or administrative enforcement action under Rule 21F-4(c)(2) of the Exchange Act. The CRS noted that the staff did not communicate with Claimant 3 and that Claimant 3 was not the source of, or impetus for, the Commission's investigation and the information provided by Claimant 3 did not contribute to the charges brought in the Covered Action.

ii. **Claimant 3's Response to the Preliminary Determinations**

Claimant 3 submitted a timely written response ("Claimant 3's Response") contesting the Preliminary Determinations. Claimant 3 contends that he/she is entitled to "review the full administrative record," and that the Commission has "omitted" the declarations of several other Enforcement staff who were listed in the press release pertaining to the Covered Action. Claimant 3 states that "[t]he SEC's failure to provide the Whistleblower access to the full

---

[4] After the sixty-day window to submit a response to the Preliminary Determinations had passed, Claimant 1 made several other submissions contesting the CRS's recommendations. In [Redacted], approximately three months after the window for submitting a response had passed, Claimant 1 submitted a "Request for Exemptive Relief from Exchange Act Rules 21F-4 and 21F-9," comprising more than 400 pages, followed by several amendments over the following year, the most recent of which was submitted in [Redacted], approximately fifteen months after the window for submitting a response had passed. In [Redacted], approximately eight months after the window for submitting a response had passed, Claimant 1 submitted a "request for mediation" to the Commission's General Counsel of almost 150 pages. Because these materials were submitted after the sixty-day window for submissions established by Rule 21F-10(e) had passed, we decline to include them as part of this whistleblower proceeding. We did accept and incorporate into the record of this proceeding a corrected response to the Preliminary Determinations from Claimant 1 submitted in [Redacted]; the corrected response did not include new arguments or evidence, but only updated certain erroneous legal citations in Claimant 1's initial submission. In addition, in [Redacted], Claimant 1 submitted a motion for argument before the Commission. However, we do not believe that the circumstances here warrant using Section 36(a) or Rule 21F-8(a) to depart from the procedures already set forth in Rule 21F.

**EXHIBIT 2 - Page 4**

administrative record in this matter requires the SEC to vacate its Preliminary Determination, and allow the Whistleblower to prepare a response based on the full administrative record." Claimant 3 also argues that he/she provided information to other federal and state agencies, and that "the omitted declarations from the agencies themselves, do not allow the administrative record to reflect the participation of any of these federal, or non-federal agencies . . . ." Claimant 3 further argues that the staff declaration relied upon by the CRS is based upon the staff's "limited knowledge" and that relevant personnel at other government agencies "must contribute to the full administrative record."

3. Claimant 4

i. **Preliminary Determinations**

The CRS preliminarily determined that Claimant 4's claim be denied because Claimant 4 did not provide information that led to the successful enforcement of the Covered Action within the meaning of Section 21F(b)(1) of the Exchange Act and Rules 21F-3(a)(3) and 21F-4(c) thereunder. The CRS concluded that Claimant 4's information did not either (1) cause the Commission to (a) commence an examination, open or reopen an investigation, or inquire into different conduct as part of a current Commission examination or investigation, and (b) thereafter bring an action based, in whole or in part, on conduct that was the subject of claimant's information, pursuant to Rule 21F-4(c)(1); or (2) significantly contribute to the success of a Commission judicial or administrative enforcement action under Rule 21F-4(c)(2) of the Exchange Act. The CRS noted that Claimant 4's information was not the impetus for opening the Investigation, nor did it contribute to the charges in the Covered Action, and that staff did not communicate with Claimant 4.

The CRS also preliminarily determined that Claimant 4 failed to submit his/her application for award to the Commission within 90 days of the posting of the Notice of Covered Action, as required by Rule 21F-10(b). The CRS noted that Claimant 4's application for award was received 74 days after the notice period for the Covered Action closed.

ii. **Claimant 4's Response to the Preliminary Determinations**

Claimant 4 submitted a timely written response ("Claimant 4's Response") contesting the Preliminary Determinations. Claimant 4 argues that he/she is entitled to an award in connection with the Covered Action because he/she provided information about the Company to the Commission in ▓▓▓ seven years before the Covered Action was filed. Claimant 4 argues that "had the SEC Employees acted upon my Fraud TIP in ▓▓▓, [the Company] would not have likely done the other Fraud TIP and each one in between, from [a seven year period] my window of entitlement, as I see it, within which to calculate my Whistleblower award." Claimant 4's Response did not address the CRS's preliminary determination that Claimant 4 submitted his/her whistleblower award application after the 90-day submission window had closed.

II. Analysis

To qualify for an award under Section 21F of the Exchange Act, a whistleblower must voluntarily provide the Commission with original information that leads to the successful

EXHIBIT 2 - Page 5

enforcement of a covered action.[5] Under Exchange Act Rule 21F-4(a), a submission to the Commission is considered "voluntary" if, as relevant here, it is provided "before a request, inquiry, or demand that relates to the subject matter of [the] submission" is directed to the claimant or the claimant's representative "[b]y the Commission" or in "connection with an investigation by . . . any other authority of the federal government."[6] If the Commission directs a request, inquiry, or demand to a claimant or his/her representative before the claimant makes a submission, "[the claimant's] submission will not be considered voluntary, and [the claimant] will not be eligible for an award."[7] The purpose of the rule is to "creat[e] a strong incentive for whistleblowers to come forward early with information about possible violations of the securities laws rather than wait until Government or other official investigators 'come knocking on the door.'"[8] Rule 21F-4(a)(1) establishes a "simple and straightforward test for when we will treat a whistleblower as having submitted information voluntarily; as relevant here, the whistleblower must provide his or her tip to the Commission before investigators direct a 'request, inquiry, or demand' to the whistleblower that relates to the subject matter of the tip."[9] However, a claimant's submission also will be considered voluntary if the claimant "voluntarily provided the same information to one of the other authorities identified above [in Rule 21F-4(a)(1)]," such as Congress, other authorities of the federal government, or a state attorney general or securities regulatory authority, "prior to receiving a request, inquiry, or demand from the Commission."[10]

Under Exchange Act Rules 21F-4(c)(1) and (2), respectively, the Commission will consider a claimant to have provided original information that led to the successful enforcement of a covered action if, as relevant here, either: (i) the original information caused the staff to open an investigation "or to inquire concerning different conduct as part of a current . . . investigation" and the Commission brought a successful action based in whole or in part on conduct that was the subject of the original information;[11] or (ii) the conduct was already under examination or investigation, and the original information "significantly contributed to the success of the action."[12]

---

[5] Exchange Act Section 21F(b)(1), 15 U.S.C. § 78u-6(b)(1).

[6] Exchange Act Rule 21F-4(a)(1)(i), 17 C.F.R. § 240.21F-4(a)(1)(i).

[7] Exchange Act Rule 21F-4(a)(2), 17 C.F.R. § 240.21F-4(a)(2).

[8] Proposing Release for Whistleblower Rules, 75 Fed. Reg. 70488, 70,490 (Nov. 17, 2010); *see also* Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300, 34,307 (June 13, 2011) (stating that a "whistleblower award should not be available to an individual who makes a submission after first being questioned about a matter (or otherwise requested to provide information) by the Commission staff acting pursuant to any of [its] investigative or regulatory authorities").

[9] Order Determining Whistleblower Award Claim, Exchange Act Release No. 84046 at 8 (Sept. 6, 2018).

[10] Exchange Act Rule 21F-4(a)(2), 17 C.F.R. § 240.21F-4(a)(2).

[11] *See* Exchange Act Rule 21F-4(c)(1), 17 C.F.R. § 240.21F-4(c)(1).

[12] *See* Exchange Act Rule 21F-4(c)(2), 17 C.F.R § 240.21F-4(c)(2).

EXHIBIT 2 - Page 6

In determining whether the information "significantly contributed" to the success of the action, the Commission will consider whether the information was "meaningful" in that it "made a substantial and important contribution" to the success of the covered action.[13] For example, the Commission will consider a claimant's information to have significantly contributed to the success of an enforcement action if it allowed the Commission to bring the action in significantly less time or with significantly fewer resources, or to bring additional successful claims or successful claims against additional individuals or entities.[14]

The requirement that claimants file whistleblower award claims within ninety days of the posting of a Notice of Covered Action ("NoCA"), set forth in Exchange Act Rule 21F-10, serves important programmatic functions. The deadline ensures fairness to potential claimants by giving all an equal opportunity to have their competing claims evaluated at the same time. The deadline also brings finality to the claims process so that the Commission can make timely awards to meritorious whistleblowers.[15]

The requirement of Exchange Act Rule 21F-9 to submit a tip in the prescribed manner on Form TCR or through the Commission's TCR System serves similarly important functions and is critical to the trackability, management, and reliability of tips.[16] Exchange Act Rule 9(e), adopted in 2020, provides a limited exception to this filing requirement, stating that claimants must comply with the procedures for submitting information described in Rules 21F-9(a) and (b) within 30 days of providing the Commission with the original information to be relied upon as a basis for claiming an award. In addition, it provides for an automatic waiver of the TCR filing requirement where a claimant can show that he or she complied with the submission requirements of the rule within 30 days of "first obtaining actual or constructive notice about those requirements (or 30 days from the date you retain counsel to represent you in connection with your submission of original information, whichever occurs first);" and "[t]he Commission can readily develop an administrative record that unambiguously demonstrates that you would otherwise qualify for an award."[17]

---

[13] Order Determining Whistleblower Award Claims, Exchange Act Rel. No. 90922 (Jan. 14, 2021) at 4; *see also* Order Determining Whistleblower Award Claims, Exchange Act Rel. No. 85412 (Mar. 26, 2019) at 9 (same).

[14] Exchange Act Rel. No. 85412 at 8-9.

[15] *See* Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300, 34300 (June 13, 2011); Order Determining Whistleblower Award Claim, Release No. 88464 at 3 (Mar. 24, 2020).

[16] *See* Order Determining Whistleblower Award Claims, Exchange Act Rel. No. 94398 (March 11, 2022) at 3 ("The programmatic purposes of requiring whistleblowers to submit their information on Form TCR or through the online TCR portal include: allowing the Commission to promptly determine whether an individual who submits information is subject to heightened whistleblower confidentiality protections; helping the staff efficiently process the information and other documentation provided by the individual and assess its potential credibility; and assisting the Commission in eventually evaluating the individual's potential entitlement to an award. Also, by submitting a tip on Form TCR, the submitter declares under penalty of perjury that the information is true and correct to the best of the submitter's knowledge and belief. A tip that bypasses the TCR System may not contain the sworn declaration under penalty of perjury as to the veracity of the information.").

[17] Exchange Act Rule 21F-9(e), 17 C.F.R § 240.21F-4(e).

EXHIBIT 2 - Page 7

### A. Claimant 1

Claimant 1 does not qualify for an award. The record shows that Claimant 1 did not meet the voluntary submission requirement of Rule 21F-4(a), or the form and manner requirements of Rule 21F-9. For clarity, we summarize the record with regard to Claimant 1 as follows:

The [Redacted] published articles on [Redacted], regarding [Redacted].[18] Enforcement staff opened the Investigation in [Redacted] based upon review of the news reports. The staff became aware of Claimant 1 from those news reports, as they were reportedly based, in part, on Claimant 1's information and included statements from him/her. On [Redacted], two days after the articles were published, [Redacted] issued a letter to Claimant 1 requesting that Claimant 1 provide documents and appear for an interview. In [Redacted], Enforcement staff learned that other government agencies were attempting to interview Claimant 1. On [Redacted], Enforcement staff emailed foreign counsel for Claimant 1, and asked that staff be allowed to participate in any interview Claimant 1 gave to other government agencies. The record shows this was the first contact between Commission staff and Claimant 1 or his/her representatives.

On [Redacted], Enforcement staff and other government staff interviewed Claimant 1 at the offices of Claimant 1's initial U.S. counsel ("Initial Counsel"). The information provided by Claimant 1 at that interview did not substantially assist the Commission in bringing the charges in the Covered Action.[19] Following the interview, and beginning in [Redacted], the staff made several requests for information to Claimant 1 through Initial Counsel. Initial Counsel initially did not respond, and on [Redacted], Initial Counsel told Enforcement staff that Claimant 1 would not respond to the staff's requests.

Claimant 1 submitted a TCR on [Redacted], more than one year after the Investigation was opened, more than eleven months after the staff first contacted Claimant 1 requesting an interview, and more than ten months after the staff interviewed Claimant 1. In [Redacted], through new counsel, Claimant 1 sat for an interview and submitted an additional TCR. The information provided by Claimant 1 in [Redacted] was either duplicative of information Claimant 1 provided previously or not material to the allegations or charges in the Covered Action.

#### i. Voluntary Submission of Original Information

The record shows that Claimant 1 did not make a voluntary submission to the Commission.[20] [Redacted] issued a request for documents and an interview to Claimant 1 related

---

[18] As part of Claimant 1's response to the Preliminary Determinations, Claimant 1 submitted an affidavit from the author of the [Redacted] article indicating that Claimant 1 had been in contact with the author since [Redacted], and was a key source for a [Redacted] article by the same author that was published by the [Redacted] approximately ten months before the [Redacted] articles that were reviewed by Enforcement staff.

[19] The record indicates that Claimant 1, through Initial Counsel, also provided documents to the [Redacted] in [Redacted] pursuant to a subpoena.

[20] Claimant 1's whistleblower award application acknowledges that Claimant 1 received a request from an

EXHIBIT 2 - Page 8

to the subject matter of his/her tip on ~~Redacted~~. Enforcement staff first contacted Claimant 1 through his/her counsel regarding the subject matter of his tip in ~~Redacted~~, prior to receiving any information or contact from Claimant 1. Enforcement staff, along with other government agencies, interviewed Claimant 1 one month later. ~~Redacted~~ thus directed to Claimant 1 a "request, inquiry, or demand" related to the subject matter of Claimant 1's information before Claimant 1 provided his/her information to ~~Redacted~~. And likewise the Commission directed its own "request, inquiry, or demand" related to the subject matter of Claimant 1's information to Claimant 1 before Claimant 1 provided his/her information to the Commission.

Further, Claimant 1's provision of information to foreign government entities does not satisfy Rule 21F-4(a).[21] Claimant 1 states that he/she provided information to various foreign governmental entities, none of which are among those entities enumerated in Rule 21F-4(a). When adopting the whistleblower rules, the Commission explicitly declined to include foreign governments among the other enumerated entities in Rule 21F-4(a): "We have also determined not to expand the list of authorities in Rule 21F–4(a) to include foreign authorities. Foreign authorities operate under different legal regimes, with different standards. Further, as some commenters pointed out, whether and under what circumstances the Commission may receive information obtained by a foreign authority is more uncertain than is the case of other Federal authorities, and state Attorneys General or securities regulators. In addition, we may have limited ability to evaluate the scope of a request from a foreign authority to an individual, and whether it relates to the subject matter of the individual's whistleblower submission."[22] Accordingly, Claimant 1's submission of information to the Commission is not voluntary pursuant to Rule 21F-4.

Claimant 1 argues that the Dodd-Frank Act allows disclosures to the news media to be considered "voluntary" because the Dodd-Frank Act defines "original information" as, among other things, information that is "not exclusively derived . . . from the news media, unless the whistleblower is a source of the information."[23] However, whether Claimant 1's information is "original information" is irrelevant: The CRS did not make a recommendation on that issue, and it was not a basis for the Preliminary Determinations. A voluntary submission is a separate and independent requirement for a whistleblower award,[24] and the original information requirement

---

enumerated agency before Claimant 1 provided his/her information. In his/her award application, Claimant 1 responded "No" to the question "Did you provide the information identified [in the claimant's tip] before you (or anyone representing you) received any request, inquiry or demand that relates to the subject matter of your submission (i) from the SEC, . . . or (iii) in connection with an investigation by the Congress."

[21] Exchange Act Rule 21F-4(a)(2), 17 C.F.R. § 240.21F-4(a)(2).

[22] *See* Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300, 34,308 n.74 (June 13, 2011).

[23] 15 U.S.C. § 78u-6(a)(3).

[24] *See* 15 U.S.C. § 78u-6(b)(1) ("the Commission . . . shall pay an award . . . to 1 or more whistleblowers who *voluntarily* provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action . . . ." (emphasis added).

EXHIBIT 2 - Page 9

is not a substitute for the voluntary submission requirement.[25] The record demonstrates that <sub>Redacted</sub> and Commission staff contacted Claimant 1 regarding the subject matter of his/her submission before Claimant 1 provided information to either of them or any other Rule 21F-4(a) enumerated entity.

We also decline to accept Claimant 1's argument that the Commission should interpret its rule in a way that equates the news media to the other enumerated authorities in Rule 21F-4(a)(2). This argument is contrary to the plain text of the rule. In addition, Claimant's proffered interpretation would create difficulties in the implementation of 21F-4(a).

Accordingly, Claimant 1 has not met the voluntary submission requirement for a whistleblower award as set forth in Rule 21F-4(a).[26]

### ii. TCR Filing Requirements

The record also shows that Claimant 1 did not follow the procedural TCR filing requirements of Rule 21F-9 and therefore his/her claim must be denied on this independent ground. Rule 21F-9 requires, among other things, that claimants submit information on Form TCR within 30 days of providing their information to the Commission. Claimant 1 first submitted a TCR to the Commission in <sub>Redacted</sub>, more than ten months after first providing information to Enforcement staff in <sub>Redacted</sub> that he/she relies upon for his/her claim for award. Accordingly, Claimant 1 has not met the requirements of Rule 21F-9.

Claimant 1 argues that he/she was not personally aware of the TCR filing requirements, and when Claimant 1 became aware, he/she quickly submitted a TCR. But under Rule 21F-9(e), if a claimant has counsel, which Claimant 1 did, then the claimant is considered to have constructive notice of the filing requirements. Claimant 1 was represented by Initial Counsel at the <sub>Redacted</sub> interview with the Commission, and thus had constructive notice of the TCR filing requirements and the obligation to file a TCR within 30 days of the interview pursuant to Rule 21F-9. Claimant 1 further argues that Initial Counsel did not represent him/her with regard to the Dodd-Frank Act. But Rule 21F-9(e) charges a claimant with constructive notice of the filing

---

[25] Claimant 1 also argues that the Commission's 2011 whistleblower rulemaking was inadequate in failing to include the news media as one of the enumerated entities to which Claimant 1's submission would be considered voluntary under Rule 21F-4(a)(1), and that consequently, only Rules 21F-10 and 21F-11 are applicable to Claimant 1. To the extent that Claimant 1 is challenging the Commission's 2011 rulemaking, such arguments are beyond the scope of this adjudication.

[26] Claimant 1 has requested that we invoke our exemptive authority under Section 36(a) of the Exchange Act to waive the voluntary requirement. Section 36(a) grants the Commission the authority in certain circumstances to "exempt any person . . . from any provision or provisions of this title or of any rule or regulation thereunder, to the extent that such exemption is necessary or appropriate in the public interest, and is consistent with the protection of investors." The circumstances here do not warrant invoking Section 36(a). One of the principal objectives of Section 21F of the Exchange Act "is to promote effective enforcement of the federal securities laws by providing incentives for persons with knowledge of misconduct to come forward and share their information with the Commission." *Securities Whistleblower Incentives and Protections*, 76 Fed. Reg. 34300, 34,308 (June 13, 2011). Granting an exemption under these circumstances "is inconsistent with the statutory purpose of incentivizing whistleblowers to come forward early." Order Determining Whistleblower Award Claim, Exchange Act Rel. No. 92355 (July 9, 2021).

EXHIBIT 2 - Page 10

requirements when claimants "retain counsel to represent [claimant] in connection with [claimant's] submission of original information."[27] Here, as evidenced by Initial Counsel's engagement agreement provided in Claimant 1's response to the Preliminary Determinations, Initial Counsel was retained "in connection with [Claimant 1's] efforts to provide information to the U.S. government." Initial Counsel represented Claimant 1 at the interview with Enforcement staff and staff from other government agencies. Based on these facts and circumstances, we find that Initial Counsel represented Claimant 1 with regard to his/her submission to the Commission, and that Claimant 1 was thus on notice of the TCR filing requirements as of [Redacted].[28]

Accordingly, Claimant 1 did not submit a TCR pursuant to the Commission's filing requirements, and thus Claimant 1 is not eligible for an award on this independent ground.[29]

### B. Claimant 3

Claimant 3 does not qualify for an award. The staff confirmed that the information in Claimant 3's tips to the Commission was already known to the staff assigned to the Investigation. The staff also did not communicate with Claimant 3 during the course of the Investigation. Further, the staff confirmed that Claimant 3's information did not cause the staff to open the Investigation or have any impact on the Investigation or the charges brought in the Covered Action.

Claimant 3's arguments regarding the administrative record are unavailing. The whistleblower rules permit an award claimant to request and receive a copy of the materials that form the basis of the Preliminary Determinations as to that claimant.[30] Claimant 3 made such a request and received a copy of those materials, and thus Claimant 3 was provided the "full administrative record" to which he/she is entitled. The whistleblower rules do not entitle access to declarations that do not exist, nor entitle access to the files of other agencies.[31] And as evident from the record, Claimant 3's information did not lead to the success of the Covered Action.

---

[27] Exchange Act Rule 21F-9(e)(1), 17 C.F.R. § 240.21F-9(e)(1).

[28] Claimant 1 does not argue he/she meets all of the requirements for the Rule 21F-9(e) waiver of noncompliance. Even if Claimant 1 did, Claimant 1 would not merit a waiver. As discussed above, Claimant 1 did not make a voluntary submission, and thus the record does not "unambiguously demonstrate[ ] that [Claimant 1] would otherwise qualify for an award," a necessary element for the Rule 21F-9(e) waiver. Exchange Act Rule 21F-9(e)(2), 17 C.F.R. § 240.21F-9(e)(2).

[29] Claimant 1 also seeks a Section 36(a) exemption for the Form TCR filing requirement. The circumstances here do not warrant invoking Section 36(a).

[30] *See* Exchange Act Rule 21F-10(e)(1)(i), 17 C.F.R. § 240.21F-10(e)(1)(i).

[31] As part of the materials, Claimant 3 was provided with a copy of the single staff declaration that informed the CRS's Preliminary Determinations. The other declarations cited in Claimant 3's Response do not exist. And contrary to Claimant 3's view that the staff declaration was based on the limited knowledge of one attorney, the declaration, which we credit, states that it was based on the declarant's knowledge as well as information provided by other Commission staff. Claimant 3 also seeks materials from at least three other governmental agencies which allegedly received information from Claimant 3. But because Claimant 3 is not eligible for an award for the Covered Action, Claimant 3 is not eligible for an award based on a related action by another government agency. *See* 15 U.S.C. § 78u-6(b); Exchange Act Rule 21F-3(b), (b)(1); Rule 21F-4(g) and (f), and Rule 21F-11(a); Order

EXHIBIT 2 - Page 11

Accordingly, Claimant 3 is not entitled to an award.

### C. Claimant 4

Claimant 4 does not qualify for an award. As noted above, the staff declaration confirms, under penalty of perjury, that the Investigation began in *** following review of news articles. Further, the staff declaration confirms that Enforcement staff assigned to the Investigation did not receive any information from Claimant 4 during the Investigation, and that the staff did not have any communication with Claimant 4. While Claimant 4 argues in the Claimant 4 Response that he/she provided information to the Commission about the Company as early as ***, there is no information in the record supporting the contention that such information in any way contributed to the success of the Covered Action.[32] Accordingly, we find that Claimant 4's information did not lead to the success of the Covered Action.

In addition, Claimant 4's Response did not contest the CRS's recommendation that Claimant 4's claim be denied on the additional ground of Claimant 4's application not being submitted within ninety-days of the posting of the NoCA. By failing to timely present any argument to the Commission during the reconsideration stage as to this other ground for denial, Claimant 4 has forfeited the opportunity to contest this ground.[33]

For both of these reasons, Claimant 4 is not entitled to an award.

### III. Conclusion

Accordingly, it is hereby ORDERED that the whistleblower award applications of Claimants 1, 3, and 4 in connection with the Covered Action be, and hereby are, denied.[34]

By the Commission.

J. Matthew DeLesDernier
Deputy Secretary

---

Determining Whistleblower Award Claims, Release No. 34-84506 (Oct. 30, 2018); Order Determining Whistleblower Award Claims, Release No. 34-84503 (Oct. 30, 2018). Accordingly, there is no need for Commission staff to contact staff from any other government agency because Claimant 3 does not qualify for a related action award. Claimant 3 has received the record materials to which he/she is entitled.

[32] While Claimant 4's Response provided some documents that were allegedly part of Claimant 4's *** submission, Claimant 4 did not provide any submission number or identify any tip in support of his/her argument.

[33] *Cf.* Rule 21F-10(f), 17 C.F.R. § 240.21F-10(f) ("Your failure to submit a timely response contesting a Preliminary Determination will constitute a failure to exhaust administrative remedies, and you will be prohibited from pursuing an appeal pursuant to § 240.21F-13 of this chapter.").

[34] To the extent that Claimants seek a related action award, none are eligible. As already noted, a related action award may be made only if, among other things, the claimant satisfies the eligibility criteria for an award for the applicable Commission covered action in the first instance. Because Claimants are not qualified for an award in connection with the Covered Action, Claimants are ineligible for a related action award.

EXHIBIT 2 - Page 12

# **CERTIFICATE OF SERVICE**

I hereby certify that, pursuant to Fed. R. App. P. 25(c), I served copies of the foregoing Petition for Review and Motion to File Under Seal on April 28, 2023 via U.S. mail and email upon:

Nicole Creola Kelly, Chief
Office of the Whistleblower
U.S. Securities and Exchange Commission
100 F St. NE
Mail Stop 5631
Washington, DC 20549
KellyN@sec.gov

Stephen G. Yoder
Office of General Counsel
U.S. Securities and Exchange Commission
100 F St. NE
Washington, DC 20549
YoderS@sec.gov

/s/ *Stephen M. Kohn*
Stephen M. Kohn