PUBLIC COPY – SEALED MATERIAL DELETED

ORAL ARGUMENT NOT YET SCHEDULED

No. 23-1124
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

JOHN DOE,
*Petitioner*,

v.

SECURITIES AND EXCHANGE COMMISSION,
*Respondent*.

On Petition for Review of a Final Order of
the U.S. Securities and Exchange Commission

**FINAL REPLY BRIEF OF THE PETITIONER
JOHN DOE**

STEPHEN M. KOHN
Lead Counsel
KAYLA SVIHOVEC
TODD YODER
Kohn, Kohn & Colapinto, LLP
1710 N Street, N.W.
Washington, D.C. 20036
(202) 342-6980
sk@kkc.com
kayla.svihovec@kkc.com
ty@kkc.com

**Attorneys for Petitioner**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS .......................................................... ii

TABLE OF AUTHORITIES....................................................iv

SUMMARY OF THE ARGUMENT ....................................................1

  I.  THE SEC GROSSLY MISSTATES THE APPLICABLE STANDARD OF REVIEW ................................................................3

  II.  PETITIONER DID NOT WAIVE THE CHALLENGE TO THE SEC'S INTERPRETATION OF "VOLUNTARINESS" AS CONTRARY TO THE PLAIN MEANING OF THE TERM ..............................................5

    A.  Petitioner Sufficiently Raised a Challenge to the SEC's Rule on Voluntariness During the Administrative Proceeding ................................5

    B.  Even if Petitioner Had Not Raised This Argument Below, it is Permissible to Raise it Here ..............................................8

      *i.*  *Futility*..............................................8

      *ii.*  *Intervening Law* ..............................................9

  III.  THE SEC FAILS TO ESTABLISH THAT ITS INTERPRETATION OF "VOLUNTARY" IS PROPER..............................................11

    A.  The SEC's Rules on Voluntariness Were Issued Outside the Scope of Its Statutory Authority ..............................................11

    B.  The SEC's Interpretation of the Statutory Term "Voluntarily" Cannot be Accorded Persuasive Value ..............................................12

      *i.*  *Thoroughness of Its Consideration and Validity of Its Reasoning* .....13

      *ii.*  *Consistency with FCA Precedent*........................................14

      *iii.*  *Consistency with Dodd-Frank* ..............................................17

      *iv.*  *Consistency with the Concept of Whistleblowing* ..............................................20

  IV.  A COMMON-SENSE INTERPRETATION OF "VOLUNTARILY" IS THE BEST READING OF THE STATUTORY TERM ..............................................23

V.   IF THIS COURT DETERMINES THAT PETITIONER WAS A
      VOLUNTARY WHISTLEBLOWER, THE DECISION OF THE SEC
      MUST BE REVERSED AND REMANDED .............................................26

   A.   The SEC did not Contest Petitioner's Contention that if Found to be an
        "Otherwise Meritorious" Whistleblower, the SEC Must Waive any Failure
        to Timely File a Form TCR .......................................................................26

   B.   This Court Need Not Reach the Merits of Petitioner's Other Arguments
        Related to the Form TCR Filing Requirement ..........................................28

CERTIFICATE OF COMPLIANCE ......................................................................30

CERTIFICATE OF SERVICE................................................................................31

## TABLE OF AUTHORITIES

### CASES

*AARP v. United States EEOC,*
  267 F.Supp. 3d 14 (D.D.C. 2017) ......................................................12

*AT&T Corp. v. FCC,*
  220 F.3d 607 (D.C. Cir. 2000) ..........................................................3

*Blount v. SEC,*
  61 F.3d 938 (D.C. Cir. 1995) ............................................................7

*Bradley v. Vill. of Univ. Park,*
  59 F.4th 887 (7th Cir. 2023) ............................................................27

*City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys.,*
  884 F.3d 798 (7th Cir. 2018) ..............................................14, 15, 16

*Davis v. District of Columbia,*
  793 F.3d 120 (D.C. Cir. 2015) ..........................................................27

*Etelson v. Office of Personnel Management,*
  684 F.2d 918 (D.C. Cir. 1982) ..........................................................8

*Int'l Union v. NLRB,*
  459 F.2d 1329 (D.C. Cir. 1972) ........................................................28

*Lissack v. Comm'r,*
  125 F.4th 245 (D.C. Cir. 2025) ........................................................13

*Loper Bright Enters. v. Raimondo,*
  45 F.4th 359 (D.C. Cir. 2022) ..........................................................10

*Loper Bright Enters. v. Raimondo,*
  704 U.S. 369 (2024)........................................................1, 3, 4, 10, 23

*PG&E v. FERC,*
  113 F.4th 943 (D.C. Cir. 2024) ........................................................4

*Prestonback v. United States,*
   965 F.3d 1363 (Fed. Cir. 2020)...........................................................12

*Randolph-Sheppard Vendors of America v. Weinberger*,
   795 F.2d 90 (D.C. Cir. 1986) ...............................................................8

*Roosevelt v. E. I. Du Pont de Nemours & Co.,*
   958 F.2d 416 (D.C. Cir. 1992) ..............................................................9

*Ross v. SEC,*
   No. 21-1165 (D.C. Cir., Feb. 7, 2022) ..................................................9

*S.D. Warren Co. v. Me. Bd. Of Envtl. Prot.*,
   547 U.S. 370 (2006)...........................................................................12

*Stoiber v. SEC*,
   161 F.3d 745 (D.C. Cir. 1998) .............................................................9

*Terry v. Gary Community School Corp.*,
   910 F.3d 1000 (7th Cir. 2018) ...........................................................27

*U.S. ex rel. Barth v. Ridgedale Elec., Inc.,*
   44 F.3d 699 (8th Cir. 1995) ...............................................................18

*U.S. ex rel. Fine v. Chevron,* 72 F.3d 740
   (9th Cir. 1995) (*en banc*) ....................................................................14

*U.S. ex rel. Fine v. Chevron, U.S.A.,*
   72 F.3d 740 (9th Cir. 1995) ...............................................................12

## **STATUTES**

15 U.S.C. § 78u–6(a)(6) .........................................................................11

15 U.S.C. § 78u–6(c)(2)(D).....................................................................11

15 U.S.C. § 78u-6(j) ...............................................................................11

31 U.S.C. § 3730(e)(4)(A)........................................................................21

Dodd-Frank Wall Street Reform and Consumer Protection Act,
   Pub. L. No. 111-203, 124 Stat. 1276 (2010)..........................................................1

## RULES AND REGULATIONS

17 C.F.R. § 240.21F-4(a)(2)....................................................................................26

## ADMINISTRATIVE MATERIALS

IRM 25.2.2.6.4(4)...................................................................................................21

*Order Determining Whistleblower Award,*
   Exchange Act Rel. No. 84046,
   Whistleblower Award Proceeding File No. 2018-11 (Sept. 6, 2018)...................8

*Order Determining Whistleblower Award,*
   Exchange Act Rel. No. 99890, 2024 SEC LEXIS 787 (Apr. 3, 2024) ...............27

Securities Whistleblower Incentives and Protections,
   76 Fed. Reg. 34,300 (June 13, 2011) .........................................................6, 7, 24

## LEGISLATIVE MATERIALS

2006 S. Rep. 111-176 (2010) .................................................................................14

# **GLOSSARY**

| | |
|---|---|
| APA | Administrative Procedure Act |
| Dodd-Frank | Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1276 (2010) |
| Final Order | *Order Determining Whistleblower Award, In the Matter of the Claims for an Award in connection with* ████████ ████████ ███ █ ███ ███ ███ Exchange Act Rel. No. 97228, Whistleblower Award Proceeding File No. 2023-47, 2023 SEC LEXIS 819 (Mar. 31, 2023) |
| Opening Br. | Petitioner John Doe's Opening Brief |
| Preliminary Determination | Preliminary Determination of the Claims Review Staff, ████████ ████████ |
| SEC | Securities and Exchange Commission |
| SEC Br. | Respondent Securities and Exchange Commission's Brief |

vii

Material Under Seal Deleted

## SUMMARY OF THE ARGUMENT

The Securities and Exchange Commission ("SEC" or "Commission") fails to successfully challenge the most basic premise of this appeal: under any common-sense reading of Dodd-Frank's statutory term "voluntarily," ███████ voluntarily submitted original information and is therefore entitled to coverage under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1276 (2010).

As a preliminary matter, the Commission severely misstates the applicable standard of review by borrowing language directly from *Chevron* and its progeny to present a standard that is no longer good law. The correct standard of review requires the Court to "independently interpret" the statute by utilizing all "traditional tools of statutory construction" to find the best reading of the statute as though "there were no agency involved." *Loper Bright Enters. v. Raimondo*, 704 U.S. 369, 400-01 (2024).

The Commission then incorrectly argues that ██████ waived ██ argument that the SEC's "voluntariness" rules run contrary to the term's plain meaning. Not only does ██████ administrative appeal repeatedly argue for a plain meaning interpretation throughout ██ administrative appeal, but the futility of this argument in the face of the SEC's repeated refusals to address it in the past, as well as the Supreme Court's intervening decision in *Loper*, render it unnecessary for ██████ to

1

Material Under Seal Deleted

have expounded on it in more detail at the administrative level in order to present it now.

Substantively, the Commission fails to establish that its interpretation of "voluntarily" is the best reading of that term, nor can they demonstrate that this interpretation should be accorded any persuasive value. The SEC's interpretation of "voluntarily" is not only inconsistent with the term's common-sense meaning, but contravenes years of precedent, defeats Dodd-Frank's very purpose, and disregards the role of media disclosures as acknowledged in the SEC's own policy statement.

The plain, common-sense understanding of the term "voluntarily" is unequivocally the best reading in the Dodd-Frank context.  Each and every one of the cases cited by the SEC makes this point clearer. There is a vast difference between the complacent, self-interested informant who only comes forward once the government "comes knocking," and the courageous whistleblower who takes extraordinary risks to shout their disclosures from the rooftops, with the specific intent of attracting government attention. The SEC's interpretation of "voluntariness" destroys any distinction between these scenarios.

Lastly, nowhere does the SEC contest the conclusion that its rules require an automatic waiver of the Tip, Complaint, or Referral Form ("Form TCR") timing requirement for an "otherwise meritorious" whistleblower. So long as ███ is found to have acted voluntarily, the Court need not reach any additional arguments

Material Under Seal Deleted

concerning the filing requirement, and ███ is qualified for an award as a matter of law.

## ARGUMENT

### I. THE SEC GROSSLY MISSTATES THE APPLICABLE STANDARD OF REVIEW

As a threshold but critical matter, the Commission misstates the applicable standard of review in an attempt to accord itself more deference than it is due. The SEC cites to *AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000) for the proposition that in applying the Administrative Procedures Act's "arbitrary and capricious" standard, the Court must "presum[e] the validity" of the Commission's action. SEC Br. at 31. However, *AT&T* relies directly on the outdated *Chevron* principle of substantial deference. *Id.* at 621. In overruling *Chevron*, the Supreme Court determined that, "§ 706 makes clear that agency interpretations of statutes— like agency interpretations of the Constitution—*are not entitled to deference*." *Loper Bright Enters. v. Raimondo*, 704 U.S. 369, 392 (2024) (emphasis added).

In applying *Loper*, this Court has found that in place of agency deference, the Court will utilize traditional tools of statutory construction to independently interpret the statute at issue:

> In defending its orders, FERC presses for deference and relies on Chevron . . . But "Chevron is overruled." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244, 2273, 219 L. Ed. 2d 832 (2024). Courts must "interpret statutes, no matter the context, based on the traditional tools of statutory construction." *Id.* at 2268. We "need

not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 2273.

*PG&E v. FERC*, 113 F.4th 943, 947-48 (D.C. Cir. 2024).

The SEC asserts that in applying the APA's standard of review, the Court "may not substitute its own policy judgment for that of the agency, but rather simply ensures that the agency has acted within a zone of reasonableness." SEC Br. at 21 (internal quotations omitted). Once again, this presentation is based on outdated law. *Loper* held that "[t]he APA, in short, incorporates the traditional understanding of the judicial function, under which courts *must exercise independent judgment* in determining the meaning of statutory provisions." *Loper*, 369 U.S. at 394 (emphasis added). *Loper* replaces *Chevron's* "reasonableness" standard with the "best reading" standard, directing courts to find "the reading the court would have reached if no agency were involved." *Id.* at 400.

The correct standard of review is clear: the court must exercise independent judgment and employ all tools of statutory construction to determine the best reading of the statute. "It therefore makes no sense to speak of a permissible interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best. In the business of statutory interpretation, if it is not the best, it is not permissible." *Loper*, 369 U.S. at 400. The SEC's reading of the standard is a transparent attempt to confuse the Court and allocate itself undue deference.

Material Under Seal Deleted

## II. PETITIONER DID NOT WAIVE THE CHALLENGE TO THE SEC'S INTERPRETATION OF "VOLUNTARINESS" AS CONTRARY TO THE PLAIN MEANING OF THE TERM

### A. Petitioner Sufficiently Raised a Challenge to the SEC's Rule on Voluntariness During the Administrative Proceeding

As a matter of law and fact, ███ did not waive arguments concerning the SEC's rules defining "voluntarily." ███ argued for a plain meaning interpretation of the term from the outset, explaining that because ██ "'voluntary' disclosures were the basis for the enforcement actions . . . As a matter of law, ██fully qualifies for an award."    JA148 (Claimant's Appeal and Written Response (hereinafter "Administrative Appeal")). ███ elaborated that ███"satisfied all of the requirements of the DFA [Dodd-Frank Act], and based on a plain meaning [reading] of that statue is entitled to a reward**.**" JA158.

The Administrative Appeal went on to explain that the SEC's interpretation of the statutory term "voluntarily" runs directly contrary to the plain meaning of Dodd-Frank, concluding:

> "The CRS erred when it held that 'whistleblowers do not meet the requirements' of the DFA [i.e. the stature, not the regulation] 'by providing information to the news media. This holding was erroneous and *in violation of the plain meaning of the DFA*." JA153 (emphasis added).

And:

> The SEC cannot use an overly broad definition of "voluntary" to negate the statutory right of whistleblowers to initially file "original

Material Under Seal Deleted

information" to the news media, while exempting other agencies it apparently favors. JA154.

During rulemaking the SEC acknowledged that the rule requiring a whistleblower to come to the SEC before the government "comes knocking" could have "unintended consequences of precluding a submission from being considered 'voluntary'" in a range of circumstances that Congress understood should be covered. JA154 (citing Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300, 31319 n. 81 (June 13, 2011)). Because the news media was the *only* entity for which original information could be submitted that was omitted from the so-called "knocking" rule's exceptions, ███ reasonably concluded that this omission could have been an "oversight." JA159.  The Administrative Appeal then states ███ key position: *"[i]f this oversight was intentional, it would constitute a highly troubling violation of the DFA's plain language."* JA159 (emphasis added).

███ concern that the SEC's interpretation of "voluntary" violated the plain meaning of Dodd-Frank was explicit:

> Without including communications to the news media within its framework, the statutory right of whistleblowers to provide information to the news media is undermined, chilled, and denied in violation of the plain meaning of the DFA.
>
> JA160.

Material Under Seal Deleted

The SEC's proposition that "Doe's response nowhere challenged the validity of Rule 21F-4(a)(1) under the plain meaning of the statute" is plainly misguided. SEC. Br. 25.

Regardless, this Court has found that the waiver rule is "aimed only at assuring that the Commission have had a chance to address claims before being challenged on them in court." *Blount v. SEC*, 61 F.3d 938, 940 (D.C. Cir. 1995). As a result, a claim will not be barred if the issues raised are not "in any salient way different from the concerns raised and considered during the rulemaking," as an agency cannot claim to be surprised by an issue it has addressed previously. *Id.*

As the SEC points out, the Commission directly considered the validity of their voluntariness rule during rulemaking, in which they assessed and rejected propositions to widen its restrictive definition of voluntary, and considered ways to avoid application of the "knocking" rule to numerous entities the SEC favored or Congress mandated. 76 Fed. Reg. at 70,490 and 34,306, n.54. Concern over these rules is in no way new, and the Commission cannot claim to have been surprised by these concerns in ██████ brief or claim to not have had the chance to address them previously.

Material Under Seal Deleted

## B. Even if Petitioner Had Not Raised This Argument Below, it is Permissible to Raise it Here

Even if ████ raising of the plain meaning issue and the SEC's opportunities to address the issue during rulemaking is found to be insufficient, the circumstances nonetheless allow for this issue to be raised now.

  *i.  Futility*

When an agency has "made known that its general views are contrary to those of the complainant and has never given an inkling that it would consider a matter afresh," it would be futile to ask the complainant to "make a pro forma request that the agency redo its system." *Etelson v. Office of Personnel Management*, 684 F.2d 918, 925 (D.C. Cir. 1982); *see also Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986) (applying the futility exception when "an agency has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider").

The SEC has made it clear that it has no intention of reconsidering this rule. In 2018 the Commission expressly rejected a whistleblower's argument to apply the plain meaning and dictionary definition of "voluntarily" that they "acted 'of [his/her] free will.'" *Order Determining Whistleblower Award,* Exchange Act Rel. No. 84046, Whistleblower Award Proceeding File No. 2018-11, p. 10, n.21 (Sept. 6, 2018), https://www.sec.gov/rules/other/2018/34-84046.pdf ("Release No. 34-84046").

Further, in a case recently argued by undersigned counsel before this Court, the Commission vigorously defended against a direct challenge to the failure to utilize the plain meaning of the statutory term "voluntarily." While the Court did not ultimately address this issue, the SEC was steadfast in its conclusion that "[t]he Commission's interpretation of 'voluntarily' is supported by the statutory text and context," despite the Petitioner's "great emphasis on the purported 'plain meaning' of 'voluntary.'" *See* Brief of Respondent at 20*, Ross v. SEC,* No. 21-1165 (D.C. Cir., Feb. 7, 2022); Securities Exchange Act of 1934 Release No. 92355, Whistleblower Award Proceeding File No. 2021-67 (July 9, 2021).

Because the Commission articulated this position on the plain meaning understanding of "voluntary," it would have been futile to belabor the point in an appeal restricted to 20 double-spaced pages.

> ### *ii.*     *Intervening Law*

Further, "[t]he failure to raise an issue in a prior forum is excusable when due to an intervening change in the law." *Stoiber v. SEC*, 161 F.3d 745, 754 (D.C. Cir. 1998). *See also Roosevelt v. E. I. Du Pont de Nemours & Co.,* 958 F.2d 416, 419 (D.C. Cir. 1992) (finding an exception to the practice not to entertain issues first raised on appeal because "between the district court's decision and our consideration of the appeal, a relevant Supreme Court decision intervened.").

Here, the Supreme Court's decision in *Loper,* issued between the SEC's Final Order and this Court's review, drastically shifted the framework of the relevant issues in this case. At the time of ████ Administrative Appeal, the *Chevron* doctrine remained settled law, rendering the reasonableness of the SEC's action the key issue to be argued. Well after the conclusion of the administrative proceeding, the Supreme Court overruled the *Chevron* doctrine and – instead of utilizing reasonableness – directed courts to employ "traditional tools of statutory construction." *Loper*, 369 U.S. at 374.

The relevance and importance of the plain meaning analysis was drastically heightened post-*Loper* now that the courts are instructed to exercise a *de novo* interpretation, utilizing tools of statutory interpretation to discern "the reading the court would have reached if no agency were involved." *Loper*, 369 U.S. at 400. Even further, the Supreme Court's decision in *Loper* was a direct reversal of D.C. Circuit precedent concerning the proper standard by which to analyze an appeal of an administrative decision. *Loper Bright Enters. v. Raimondo*, 45 F.4th 359 (D.C. Cir. 2022). Therefore, *Loper* represents not just an intervening change of the law generally, but a specific change to D.C. Circuit precedent and the way the D.C. Circuit must apply the APA.

## III. THE SEC FAILS TO ESTABLISH THAT ITS INTERPRETATION OF "VOLUNTARY" IS PROPER

### A. The SEC's Rules on Voluntariness Were Issued Outside the Scope of Its Statutory Authority

In defending its interpretation of "voluntary," the Commission highlights its statutory rulemaking authority. SEC. Br. p. 28. However, the SEC's rulemaking with respect to the "voluntary" requirement exceeds the scope of this authority. Dodd-Frank delegates to the SEC "the authority to issue such rules and regulations as may be necessary or appropriate to *implement* the provisions of this section consistent with the purposes of this section." 15 U.S.C. § 78u-6(j). Elsewhere, Dodd-Frank tasks the SEC with regulating the "form" and "manner" in which a whistleblower is to submit information. 15 U.S.C. § 78u–6(a)(6); 15 U.S.C. § 78u–6(c)(2)(D). This authority is plainly of a procedural nature and carries no indication that Congress intended for the Commission to create its new definitions of commonly used statutory terms.[1]

To justify its "voluntariness" rule, the SEC points to a provision of the Securities Exchange Act of 1934 authorizing the Commission to define "technical, trade, accounting, and other terms in the Act." SEC Br. at 28. The SEC's attempt to

---

[1] Dodd-Frank's strict rulemaking language cannot be viewed in a vacuum, and the specific requirements the Commission must follow when reviewing a whistleblower's case are best understood in light of the context that the statute was passed, *i.e.* the SEC's mishandling of a whistleblower's allegations in the case of Bernie Madoff. S. Rep. 111-176, at 111 n.179 (2010).

designate "voluntary" as a technical term of art is a clear attempt to elude the plain language canon of statutory construction.

"Voluntarily" is clearly not a technical term or a term of art, as courts routinely interpret it using dictionary and common-sense definitions. *See, e.g., U.S. ex rel. Fine v. Chevron, U.S.A.,* 72 F.3d 740, 744 (9th Cir. 1995) (citing *Webster's Dictionary* to support a "common sense reading" of the term "voluntary" in the context of the False Claims Act ("FCA")). *AARP v. United States EEOC,* 267 F.Supp. 3d 14, 24 (D.D.C. 2017) (turning to the dictionary definition of the term "voluntary" in the context of the Americans with Disabilities Act); *Prestonback v. United States,* 965 F.3d 1363, 1368 (Fed. Cir. 2020) (citing *Webster's Dictionary* for the term "voluntary" in the context of a statute dictating pay for uniformed servicemembers.).

Because voluntary "is neither defined in the statute nor a term of art, we are left to construe it in accordance with its ordinary or natural meaning." *See S.D. Warren Co. v. Me. Bd. of Envtl. Prot.,* 547 U.S. 370, 375 (2006). Any attempt to define it otherwise falls outside the scope of the SEC's rulemaking authority.

### B. The SEC's Interpretation of the Statutory Term "Voluntarily" Cannot be Accorded Persuasive Value

As the SEC acknowledges, "[a] court's job in determining the 'best reading' of a statute is to interpret the words consistent with their ordinary meaning… unless the context in which the word[s] appear[] suggests another meaning." SEC Br. at 28

(internal citations omitted). After reaching this conclusion, the SEC makes no effort to analyze the term "voluntarily" in accordance with its plain meaning, and makes no argument as to how the context of the statute suggests any other meaning. Instead, the SEC defaults to its attempt to urge the Court to give deference to the "persuasive value" of its own interpretation.  SEC. Br. at 28.

This Court assesses the persuasive value of agency interpretations "based on the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements." *Lissack v. Comm'r,* 125 F.4[th] 245, 259 (D.C. Cir. 2025). The SEC's interpretation fails at each of these turns.

       *i.*     *Thoroughness of Its Consideration and Validity of Its Reasoning*

The SEC's brief disingenuously misstates Petitioner's position to create the appearance of thorough consideration of the question at hand:

> In adopting the definition in 2011, the Commission expressly considered comments urging it to adopt the definition of voluntarily that Doe prefers in this appeal. *But the Commission explained that "[a] standard based on the receipt of a subpoena would go too far* in permitting individuals to claim whistleblower awards . . .

SEC Br. at 32 (emphasis added)

Nowhere has Petitioner indicated the position that "voluntary" should be defined in contrast to a subpoena. Clearly there are situations in which a person can be compelled to act in the absence of a subpoena. Petitioner's positions are clear: the SEC's rules on voluntariness are improper because they fail to implement the plain

13

Material Under Seal Deleted

meaning of the statutory term, and they further fail to implement the statutory right to make disclosures of original information to the news media.

The Commission has never supplied valid reasoning as to why it rejected the *Webster's Dictionary* definition and the key FCA case that adopted it. *U.S. ex rel. Fine v. Chevron,* 72 F.3d 740, 744 (9th Cir. 1995) (*en banc*). The SEC has in the past defended its interpretation when confronted with a plain-meaning challenge with only the conclusory statement that "[t]he Commission's interpretation of 'voluntarily' is supported by the statutory text and context," (*See* Br. of the Resp., at 20, *Ross v. SEC,* No. 21-1165) with no reasoning as to why the plain meaning was not applied.

### ii.    *Consistency with FCA Precedent*

The SEC stresses consistency of the interpretation of voluntary over time but cites no cases in the many years of judicial interpretation of the same term found in the FCA, on which Dodd-Frank was based. 2006 S. Rep. 111-176, at 111 (2010). Instead, the Commission cites one Seventh Circuit case regarding a state law that "closely mirrors the False Claims Act," finding that voluntary means "something more than the absence of physical coercion or immediate legal compulsion." SEC Br. at 32; *quoting City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys.,* 884 F.3d 798 (7th Cir. 2018). *City of Chicago* in no way cuts against ████ position, and instead fully supports the conclusion that ████ acted voluntarily.

In *City of Chicago,* "[t]he OIG advised Rosenberg that he had a *duty to cooperate* with the investigation and that his statements would *not be used against him* in a criminal proceeding." *City of Chicago,* 884 F.3d at 801 (emphasis added). The facts underlying █████ disclosure demonstrate the exact opposite. ███████ initial disclosures to the press were not only given free of any duty whatsoever, but were given at extreme personal, professional, reputational, and financial risk. JA174.

Similarly, ██████ was under no "duty to cooperate" when ████ agreed to interviews with Congressman Adam Schiff and SEC staff. *See* Schiff Letter to the Court, ECF No. 2088943. ███████████████████████████████████ ███████████████████████████████ Throughout the process, SEC investigators made clear that ████ was under no duty to answer any questions and could terminate the interview at any time. JA139. No duty to cooperate existed at any stage of ███████████████████████

The second, and even more powerful, differentiating factor in *City of Chicago* is the valuable consideration the relator received in exchange for his testimony. The Seventh Circuit stressed that "his disclosures were motivated purely by his own self-interest. The OIG requested Rosenberg submit for an interview and provide information in exchange for an *express immunity agreement.*" *City of Chicago,* 884 F.3d at 805-06 (emphasis added). The *City of Chicago* whistleblower had potential

15

criminal liability and consequently bargained for and obtained immunity from prosecution in exchange for testimony.

The exchange of immunity for testimony is not whistleblowing, has nothing to do with Dodd-Frank, and would not qualify as voluntary under *Webster's Dictionary* definition. To equate criminals exchanging testimony for immunity with voluntary whistleblowers acting in good faith demonstrates a complete misunderstanding of the purpose behind laws like the False Claims Act and Dodd Frank. The Seventh Circuit understood this distinction:

> Having read the writing on the wall, Rosenberg divulged information about the bribery scheme in which he was an active and essential participant for nearly ten years. . . To hold that Rosenberg's disclosure was voluntary . . . [would] transform the ordinance into a vehicle for fraudsters to evade responsibility while at the same time profiting further from their crimes. No reasonable reading of the FCO requires such a result.

*City of Chicago,* 884 F.3d at 806.

Unlike the would-be relator in *City of Chicago,* it was ████ who first exposed the misconduct in the news media, and who willingly took on the risk of permitting ██ ███████████████████████ with the *specific intent* that government institutions and law enforcement agencies could quickly learn of ██ identity and take action. ████ was under no duty to cooperate, did not bargain for any consideration in exchange for his testimony, and *never* sought immunity in exchange for information.

Material Under Seal Deleted

### iii.    Consistency with Dodd-Frank

The SEC highlights that its definition of "voluntarily" is consistent with Dodd-Frank because it incentivizes whistleblowers to come forward before the government "comes knocking." *See* SEC Br. at 33. However, the SEC's rules are improperly overinclusive in that they exclude ██████ from eligibility even though ██████ did not in any way "wait for the government to come knocking" but instead took affirmative steps of ██ own accord, resulting from ██ own free will, and at great risk to attract public and governmental attention to the information ██ possessed.

The SEC highlights that Dodd-Frank is "intended to incentivize whistleblowers to bring information to the Commission as a supplement to the Commission's own investigatory efforts, not a response to them." SEC Br. at 31. This is a bizarre way of justifying ██████ disqualification, given that ██ disclosures did not just *supplement* the SEC's investigatory efforts, but *initiated them.* JA187 ("The investigation that led to the Covered Action (the "Investigation") was opened by Enforcement staff in ██████ after staff reviewed news reports indicating ████████████████████").

If ████ is said to have waited for the government to "come knocking" it is only because ██ shouted from the rooftops for the right person to come knock and hear what he had to say. If someone witnesses a crime occurring on the street and

17

Material Under Seal Deleted

shouts for help, getting the attention of an off-duty police officer who then asks the witness to recount what she saw, the resulting disclosure of information is clearly not "involuntary" simply because the officer asked for it. The witness's call for help initiated the entire chain of events. In the same way, ████ went to great lengths to garner worldwide attention to ██allegations with the specific intent of alerting the right authorities and bringing about change and accountability. The media - as recognized by the FCA, IRS, and Dodd-Frank whistleblower laws as well as the SEC's own Policy Statement and Enforcement Manual - was the logical platform to disclose "original information." Based entirely on those news stories, Congressman Schiff indeed came knocking, and ████ gratefully, enthusiastically, promptly and *voluntarily* gave every bit of information ██had to give.

The necessity of a voluntary requirement to eliminate would-be whistleblowers who had to be dragged out of the house kicking and screaming is clear, but that is simply not the case here.   It is for this reason that the Commission's reliance on *Barth* and *Paranich* is also misplaced. SEC Br. at 35, n. 7.

In *Barth*, the employee's disclosures were made solely because of a discussion "initiated by [the investigator] rather than [the employee]." *U.S. ex rel. Barth v. Ridgedale Elec., Inc.,* 44 F.3d 699, 704 (8th Cir. 1995). Key to the holding that these disclosures were non-voluntary was the fact that "although Barth had been aware of Ridgedale's possible fraud against the government for some time *he remained silent*

*until the government itself heard of the fraud* [from a source outside of Barth] *and began its own investigation*." *Id.* (emphasis added). ▮ in no way remained silent. Instead, ▮ risked lawsuits and professional ostracism to make as much noise as possible in front-page news stories with ▮ name attached. Unlike Barth, ▮ is the reason the government learned of the misconduct in the first place. The resulting disclosures to then-Congressman Schiff took place in an interview initiated as a direct result of ▮ news stories. This interview – in Representative Schiff's own words – was conducted voluntarily. *See* Schiff Letter to the Court, ECF No. 2088943.

*Paranich* follows precisely the same reasoning as *Barth*. In *Paranich*, the relator is likened to a "complacent, reluctant, or delinquent informant" whose disclosures were "brought forward as a result of the government's pointed contact." *U.S. ex rel. Paranich v. Sorgnard,* 396 F.3d 326, 340-41 (3d Cir. 2005). In finding that these disclosures were non-voluntary, the court concluded that it would "undermine the voluntary provision requirement to allow a relator to extract the benefit" where his participation in the investigation was "sustained by self-interest, *with all indications suggesting that the relator would not have come forward otherwise*." *Id.* at 341 (emphasis added). These factors led to the conclusion that "Paranich was not a voluntary originator of this investigation." *Id.*

19

Material Under Seal Deleted

Again, these facts could not be more different from the facts at hand. The risks taken by ▇▇▇ to disclose this misconduct on the global stage indicate a clear lack of self-interest.  Further, not only are there *indications* that ▇▇ would have come forward had the government not "come knocking," but ▇▇ *already had* come forward ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Lastly, by the SEC's own admission, ▇▇▇▇ unequivocally voluntary news media stories were the precise origin of the SEC's investigation. JA187.

*Paranich* and *Barth* are true examples of would-be whistleblowers waiting for the government to come knocking. ▇▇▇ is an example of a *bona fide* whistleblower shouting loudly from the rooftops in hopes that the right authority comes knocking. ▇▇▇ disqualification is in no way consistent with this precedent or the purposes of Dodd-Frank.

### iv.   Consistency with the Concept of Whistleblowing

Further, not only is the SEC's failure to implement the statutory right to make disclosures to the news media inconsistent with Dodd-Frank, but this failure is inconsistent with an entire history of whistleblowing.

From Daniel Ellsberg leaking the Pentagon Papers to the *New York Times*, to Mark Felt disclosing details of the Watergate scandal to the *Washington Post,* whistleblower reports made to the news media have made massive impact, bringing widespread misconduct to the attention of the public and the government. As

Congress developed legislation to encourage and reward whistleblowers, the historical success of the media whistleblower has been expressly taken into account. The FCA's original source doctrine embraces the notion that whistleblowers often make valuable reports to the government via the news media: "The court shall dismiss an action or claim under this section…if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed…from the news media, *unless…the person bringing the action is an original source of the information*." 31 U.S.C. § 3730(e)(4)(A)(emphasis added). Similarly, the IRS whistleblower program allows whistleblowers to report information derived from the news media so long as the whistleblower was the "original source" of the news reports. IRM 25.2.2.6.4(4).

To disregard the role of the media whistleblower is to disregard not only the text of Dodd-Frank and the intent of Congress in its creation of a statute expressly modeled after the FCA and IRS law, but the simple reality of whistleblowing. The Commission's own Enforcement Manual that encourages the staff to read the newspapers for potential enforcement actions acknowledges this reality, but the Commission inexplicably refuses to give it force in the regulatory scheme. *See* Opening Br. at 41.

This failure creates the mindboggling scenario in which the more effective, credible, and attention-grabbing a media whistleblower is, the faster they will be

Material Under Seal Deleted

disqualified under the SEC's rules. The SEC proposes an attempted solution to incorporate the media whistleblower into their convoluted regulatory scheme:

> Had Doe, for example, told the news media qualifying information first, and then told the Commission that information before the Commission had seen the news reports and contacted Doe, the submission would have been voluntary.

SEC Br. at 43

This argument exposes the absurdity of the Commission's position. They have no issue with whistleblowers contacting the press first, but their concern is whether the whistleblower contacts the SEC before or after the moment an SEC investigator happens to read the resulting news story and chooses to contact the whistleblower – an event entirely outside the whistleblower's control. The reality of this supposed solution is a world in which the most credible whistleblower with the most damning evidence of the most egregious violations that lands on the front-page news and quickly catches government attention will be disqualified from eligibility far faster than a less credible whistleblower with less helpful disclosures relegated to the back pages of an obscure media site. In this case, the SEC seeks to punish ███ for doing what any good-faith whistleblower would do: prioritizing the dissemination of critical information as quickly, widely, and loudly as possible.

This outcome is inconsistent with judicial precedent, legislative history, the purpose of Dodd-Frank, and the very concept of whistleblowing. An interpretation that leads to this outcome cannot be afforded persuasive value.

## IV.   A COMMON-SENSE INTERPRETATION OF "VOLUNTARILY" IS THE BEST READING OF THE STATUTORY TERM

Instead of deference to the agency's interpretation, Petitioner reiterates the position that the plain meaning of the term "voluntary" *must apply.* The SEC highlights that there are other dictionary definitions of the term "voluntary" than *Webster's Dictionary*, and the existence of these other definitions somehow lends credence to their chosen interpretation. This argument is perplexing for a number of reasons.

First, that there might be multiple definitions of a statutory term is inherent in the Court's mandate to "determine the best reading of the statute." *Loper,* 369 U.S. at 400. "In the business of statutory interpretation, if it is not the best, it is not permissible." *Id.*

Second, the SEC's own rules make it clear that some definitions fit better in this context than others. The SEC cites an alternate definition from the Oxford English Dictionary, defining voluntary in part as "naturally" and "spontaneously." SEC. Br. at 30. But the Commission's attempt to square its rules with this alternate definition fails entirely in that it ignores the rule's own exceptions, which reveal the awareness of numerous situations wherein this restrictive definition of voluntary would lead to nonsensical results. According to the rule's exceptions, a whistleblower can report to an entirely non-governmental entity such as a self-regulatory organization, subsequently receive an inquiry from the SEC, and their

23

Material Under Seal Deleted

responsive disclosure will still be considered voluntary. This disclosure – prompted by an SEC request – is in no way "spontaneous," yet it is protected as voluntary.

Dictionaries lay out definitions in the alternative, and a word can carry slightly or vastly different definitions in different contexts. While the Oxford definition "spontaneously" may apply in the context of a person "voluntarily" making an unsolicited donation to charity, it clearly does not apply to a "voluntary" confession made during a police interrogation: made of the suspect's own free will, but plainly not made "spontaneously." *Context matters*. Dictionaries do not contain one single, unequivocal definition for each word for a reason. Nonetheless, the SEC has chosen to cling tightly to its strict bright -ine rule for the term "voluntarily" that the Commission itself recognized may lead to absurd "unintended consequences." 76 Fed. Reg. at 31319 n. 81 (June 13, 2011).

Despite the existence of other possible definitions being an irrelevant distraction, the remaining definitions that the Commission cites to justify ███████ disqualification ultimately achieve the opposite result. The SEC suggests that their rules are in line with the Oxford Dictionary definition of "not constrained, prompted, or suggested by another." SEC Br. at 30. If the Commission is determined to hinge the analysis of voluntariness on who "prompted" whom, they must follow this line all the way back to who initiated this "chain" of prompting. ███████ initial disclosures to Congress were prompted by Congressman Schiff's request, which was

Material Under Seal Deleted

in turn directly prompted by ███ *spontaneous* disclosures to the news media that were *specifically intended* to quickly get the attention of the public and the authorities. When the SEC later requested the same information after ███ disclosures to Congress, this request too was directly prompted by ███ disclosures to the news media and to Congressman Schiff. To act as though the SEC initiated the entire chain of events giving rise to the enforcement action is a disingenuous presentation of the facts.

The SEC takes issue with the Petitioner's note that even the SEC's own investigator referred to ███ interview as "voluntary," arguing that there is somehow no proof that the investigator was "invoking the whistleblower context" *while making a request for an interview with a whistleblower.* SEC Br. at 35. Not only is this objection irrelevant, but it acknowledges a substantive disparity between the common-sense understanding of what it means to be voluntary as it would be used in everyday language, including by its own staff, and what the Commission sees as voluntary in "the whistleblower context." What matters is not whether the investigator was "invoking the whistleblower context," but that – whatever the common-sense definition of voluntary is – the investigator's own words indicate that it clearly applies to these facts.

If the plain meaning of "voluntarily" is applied, ███ is clearly eligible for a reward under the SEC's own rules, which protect a submission as voluntary if the

same information is provided to Congress prior to receiving an SEC inquiry. 17

C.F.R. § 240.21F-4(a)(2). Prior to receiving a request from the Commission, ████

voluntarily – of his own accord, free will, without legal compulsion or valuable

consideration – disclosed the same information in an interview with then-

Congressman Schiff. The fact that Congressman Schiff "prompted" this interview is

of no consequence, as the interview was in turn prompted by ████ front page

news stories. Because ████ voluntarily provided information to Congress prior to

receiving a request from the Commission, ██ is entitled to a reward.

## V.   IF THIS COURT DETERMINES THAT PETITIONER WAS A VOLUNTARY WHISTLEBLOWER, THE DECISION OF THE SEC MUST BE REVERSED AND REMANDED

The SEC denied ████ claim on the secondary grounds that ██Form TCR

was untimely.  However, under controlling precedent, if this Court finds that ████

was voluntary the Form TCR issue becomes moot, and the Final Order must be

reversed and remanded.

### A. The SEC did not Contest Petitioner's Contention that if Found to be an "Otherwise Meritorious" Whistleblower, the SEC Must Waive any Failure to Timely File a Form TCR

The SEC conceded that if this Court finds ████ a voluntary whistleblower,

the Commission could not deny ███claim based on the late filed Form TCR.  ████

extensively explained in ███Brief the Commission precedent requiring automatic

waiver of the Form TCR timing requirement for "otherwise meritorious

26

whistleblowers." *See* Opening Br. at 52-54.[2] Because the SEC offered no argument rebutting this position, the Commission has forfeited and waived any opposition to it. *See Terry v. Gary Community School Corp.*, 910 F.3d 1000, 1008 n.2 (7th Cir. 2018) (finding that an appellee's counterargument is waived where the appellee did not respond to appellant's argument).

This waiver extends to the Commission's ability to challenge ███████ position on the "otherwise meritorious" whistleblower rule at oral argument (*Davis v. District of Columbia*, 793 F.3d 120, 127 (D.C. Cir. 2015) ("Generally, arguments raised for the first time at oral argument are forfeited.")) or on remand (*Bradley v. Vill. of Univ. Park,* 59 F.4th 887, 898 (7th Cir. 2023) (finding that appellees could have conceded an issue "only for purposes of appeal," which would have "left the door open to dispute that element of Bradley's case in the event of a remand," but their "failure to do so amounted to an explicit waiver.")).

The Commission did not contest ███████ argument on this point because, consistent with its own policies and precedents, it could not.  As explained in ███████ Opening Brief, under the APA "an agency must either conform to its own precedents or explain its departure from them." *Int'l Union v. NLRB,* 459 F.2d 1329, 1341 (D.C.

---

[2]*Accord.*, *Order Determining Whistleblower Award,* Exchange Act Rel. No. 99890, 2024 SEC LEXIS 787 at *5, n. 6 (Apr. 3, 2024) ("we have exercised our Section 36(a) exemptive authority in otherwise meritorious claimant filed a Form TCR after first providing information to the Commission").

Material Under Seal Deleted

Cir. 1972); Opening Br. at 47.  The SEC chose not to justify a departure from this precedent and is thus bound by it.

### B. This Court Need Not Reach the Merits of Petitioner's Other Arguments Related to the Form TCR Filing Requirement

Petitioner's Opening Brief raises other bases for finding that ███ Form TCR was timely filed.  ███ stands on these arguments.  However, as explained above, because the SEC did not contest ███ argument that if the Court were to find ██ a voluntary whistleblower the Form TCR requirement would automatically be waived, this Court need not address these issues.

The disposition of this appeal therefore hinges entirely on this Court's determination of whether ███ was a voluntary whistleblower. If ███ is found to be a voluntary whistleblower ██ would be an "otherwise meritorious whistleblower" entitled to an automatic waiver of the Form TCR rule and eligible for a reward.

## CONCLUSION

The SEC's Final Order should be reversed and remanded.

Respectfully submitted,

/s/ *Stephen M. Kohn*
Stephen M. Kohn
D.C. Bar No. 411513
Email: sk@kkc.com

/s/ *Kayla Svihovec*
Kayla Svihovec
D.C. Bar No. 1735588
Email: kayla.svihovec@kkc.com

*/s/ Todd Yoder*
Todd Yoder
D.C. Bar No. 1048520
Email: ty@kkc.com

KOHN, KOHN & COLAPINTO, LLP
1710 N Street, N.W.
Washington, D.C. 20036
Phone: (202) 342-6980
Fax: (202) 342-6984
*Attorneys for Petitioner*

Dated: April 14, 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains <u>6,440</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word in 14 point, Times New Roman.</u>

Dated: April 14, 2025

Respectfully submitted,

*/s/ Kayla Svihovec*
Kayla Svihovec

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this fourteenth day of April, 2025, I caused a true and correct copy of Petitioner's Reply Brief to be filed via the CM/ECF system for the United States Court of Appeals for the District of Columbia Circuit. All participants in the case are registered CM/ECF users and will be served via the CM/ECF system.

Respectfully submitted,

*/s/ Kayla Svihovec*
Kayla Svihovec